I. W. Hill, Appellant, v. The Missouri Pacific Railway Company, Respondent.

St. Louis Court of Appeals, May 3, 1892.

1. **Railroads:** KILLING STOCK: COMMON-LAW RIGHT OF ACTION. The statute for the recovery of single damages against railroad companies for the killing of stock (R. S. 1889, sec. 4428) does not provide for an exclusive remedy, but is cumulative and does not displace the common law in the situation to which it applies.

2. ———: ———: RECOVERY UNDER GENERAL ALLEGATION OF NEGLIGENCE. *Held, arguendo,* that, under a general allegation of negligence on the part of a railway company in an action against it for single damages for the killing of stock, the plaintiff may succeed either by proving negligence at common law, or by proving the constructive statutory negligence in failing to erect and maintain fences at a requisite place.

3. ———: ———: PLEADING: DETERMINATION OF CHARACTER OF ACTION. To determine whether a petition states a statutory or common-law cause of action for the killing of stock by a railway company, it is necessary to consider whether, in order to recover under the petition, the plaintiff must prove the kind of negligence named in the statute, that is, the failure on the part of the railway company to erect and maintain a lawful fence, or whether he can succeed by proving what would be negligence at common law.

4. ———: NEGLIGENCE: PLEADING. It is a good and sufficient pleading of negligence at common law on the part of a railway company to set out and describe the acts done with a reasonable degree of particularity, and then allege that they were negligently done.

5.  ———: ———: ———. Negligence in fact may consist of any number of negligent acts preceding the injury and leading up to it and contributing to it. In stating a cause of action therefor, the plaintiff is not obliged to select one of these acts and rely upon it. And *held* in this action, which was one for the killing of stock by a railway train, the petition, which alleged in one count a number of negligent acts on the part of the railway company conducing to the injury complained of, stated but a single cause of action.

6.  ———: KILLING STOCK: NEGLIGENCE IN FAILING TO DISCOVER SAME. In running its trains at places where its tracks are not fenced, and where animals are liable to stray upon its tracks, a railway company is under the duty of keeping a reasonable lookout for such animals. Accordingly, when stock thus straying upon its tracks is killed by one of its trains, the railway company is responsible therefor, if its employes could, by the exercise of reasonable care, have discovered the stock in time to have avoided injury thereto.

*Appeal from the Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED *(and certified to the supreme court).*

*John W. Booth,* for appellant.

*T. B. Crews, W. S. Shirk* and *H. S. Priest* for respondent.

THOMPSON, J.—This action was brought on the sixteenth of October, 1891, to recover damages for killing certain horses belonging to the plaintiff. The court sustained a demurrer to the petition; the plaintiff elected to stand on his petition; thereupon the court rendered judgment for the defendant, to reverse which the plaintiff prosecutes this appeal. The petition was as follows:

"Plaintiff, I. W. Hill, complaining of the defendant, the Missouri Pacific Railway Company, states that said defendant is, and at all times hereinafter mentioned was, a railroad corporation duly organized and existing under the laws of the state of Missouri by the corporate name of the Missouri Pacific Railway Company.

"That, on the eighth day of November, 1889, and for many years theretofore, said defendant owned and operated a railroad in the state of Missouri, known as the Missouri Pacific railroad, in part located within the corporate limits of the city of Pacific, in the county of Franklin and state of 'Missouri, and thence extending westward through the county of Franklin; and the said railroad, where the same crosses the west boundary line of said city, was inclosed by fences along and on the right of way of defendant, on which right of way said railroad was located; and, for a considerable distance from said boundary line into and within the corporate limits of said city, said railroad was, in like manner, inclosed by fences on and along said right of way.

"That at the place where, in said town, the said road was so fenced during all said time the lands adjoining the said railroad and the right of way thereof, on the south side of said right of way, were used for farming purposes, through which on the south side of said railroad a narrow lane ran up to the line of the right of way of said railroad; and, at the point where said line terminated on the south side of said right of way, a gate, forming a portion of said railroad fence, opened into and upon the right of way of said railroad, through which, when open, horses and other domestic animals could pass from said lane into and upon said railroad and right of way, and being on said railroad and right of way, could not escape therefrom, except by returning through said gate or passing over defendant's said fences and cattle-guards connected therewith.

" That defendant was not required by law to maintain said fences or gate at said point, but maintained the same of its own volition; and so maintaining the same it was the duty of defendant to keep said fences and gate in such condition and so connected with cattle-guards as to prevent horses and other domestic

animals from getting on said road between said fences. That, by reason of the maintenance of said fences at said place, horses and other domestic animals, being on said railroad between said fences, had less chance to escape from being injured by defendant's engines and trains than they would have had if, being on said railroad at said point, said fences had not existed to interfere with their escape from said railroad and right of way onto said adjoining lands; and, therefore, it was the duty of defendant, while it maintained said fences and gate, to use more than ordinary care to keep the same in such condition as to prevent horses and other domestic animals from getting on said railroad through said gate and fences; yet said defendant, on said day and for many years theretofore, maintained said fences and said gate in said fence on said south side of said railroad in a careless and negligent manner, and repeatedly suffered said gate to stand open and unfastened, and to be without suitable latches and fastenings to hold the same closed. That during all said time said gate had thereon insufficient fastenings, that it would open by natural causes independent of being opened by any person, and by reason of its proximity to said city said gate was peculiarly subject to being left open by persons passing either from said adjoining lands to said railroad, or from said railroad to said adjoining lands, through said gate; and during all of said time said gate was often left open and unfastened, so that horses and other domestic animals could, by passing through the same, get on said railroad; and on said day and during all said time defendant had notice of said facts.

"That the maintenance of said gate at said place, as the same was so maintained by defendant, was negligence on the part of defendant, liable to occasion injuries of the character of the injury hereinafter complained of.

"That, on the eighth day of November, 1889, by reason of said negligence of defendant, three horses, the property of plaintiff and of the value of $500, then lawfully running at large on the south side of said railroad, passed through said lane, and, the said gate not then being securely fastened, passed through said gate and so got upon said railroad at a point within the corporate limits of said city; and, having so gotten upon said railroad and being on said railroad between said fences, were frightened by an engine and train of cars then and there being run and operated on said railroad, and ran before said engine and train of cars along said railroad until they were caught, struck and killed on said railroad, in said county of Franklin, by defendant, by its said engine and train of cars, on said eighth day of November, 1889.

" And plaintiff avers that defendant, by its agents and employes, then and there running said engine and train of cars, by the exercise of reasonable care could have seen the said horses and have stopped the said engine and train of cars before overtaking or striking any of said horses, but did carelessly and negligently then and there run said engine and train of cars upon said horses, and kill the same.

" And defendant having so negligently maintained said gate in said fence, in manner and form as aforesaid, for many years and until the injury aforesaid was done to plaintiff, did within a few days thereafter close up and stop said gate by making a permanent fence along and across the same, as before the killing of plaintiff's said horses it might lawfully have done, and ever since that time defendant has maintained said fence across said gate. And plaintiff avers that, by killing his said horses in manner and form as aforesaid, defendant has damaged plaintiff in the sum of $500, for which said sum with costs plaintiff asks judgment."

The grounds of the demurrer were thus stated:

"*First.* Said petition does not state facts sufficient to constitute a cause of action.

"*Second.* Said petition alleges two separate and distinct causes of action, both united and intermingled in the same count, the first, for negligently building and failing properly to maintain a certain fence along defendant's railroad, whereby plaintiff's horses were enabled to get upon said right of way, and were killed by defendant's engine and cars, and the second being for negligence on the part of the agents and servants of defendant in failing to see said horses and negligently running its engine and cars upon said horses, the first cause of action definitely alleging the negligence of the defendant itself, and the second alleging the negligence of the servants of the defendant."

In support of this demurrer the position of the defendant is twofold: *First.* That the petition does not state an action at common law, but states an action under section 4428, of the Revised Statutes, which is the statute formerly known as section 5 of the damage act, or "the single damage act;" and, consequently, that on its face it is barred by the statute of limitations of one year, contained in section 4429 of the damage act, and that this may be reached by demurrer. *Second.* That it involves a misjoinder of two distinct causes of action.

I. The question whether the petition states only a cause of action under section 4428 of the Revised Statutes involves two inquiries: *First.* Whether that section is an *exclusive* remedy, and repeals any remedy under the common law, in the situation to which it applies, or whether it is *cumulative* merely, leaving also an action for damages under the rules of evidence existing at common law in the same situation. *Second.* If the statute is cumulative, whether the petition states

a cause of action, to prove which it is necessary to proceed under the statute.

As to the first of these propositions it is settled in this state that the statute is cumulative, and does not displace the common law in the situation to which it applies; so that, under a general allegation of negligence, the plaintiff may succeed either by proving negligence at common law, or by proving the constructive negligence of the statute in failing to erect and maintain fences in the given situation. Thus, in *Calvert v. Railroad*, 34 Mo. 243, the petition alleged, in general terms, that the defendants, "by their agents, servants, locomotives and railroad cars, negligently and carelessly ran over, maimed and killed certain cattle, belonging to plaintiff, to-wit, one cow of the value of $25, and one heifer of the value of $10, for which he asks judgment." It was objected by the defendant on appeal that this petition stated no cause of action; but the supreme court, speaking through DRYDEN, J., said: "The petition in |this case contains a clear and concise statement of the facts, imposing a common-law liability upon the appellant for the alleged negligence of its agents. But this is not enough for the appellant, who insists that the petition is bad because it does not likewise aver the facts necessary to create a statutory liability, and for this cause moves in arrest of judgment. It is unjust to the public that the time of the courts should be occupied in the consideration of a question so utterly devoid of merit." On a subsequent trial, under the same petition, it was shown by evidence that the injury occurred at a place which was not a crossing of a public highway, and which was not inclosed by a lawful fence. The jury, under the instructions of the court, having found for the plaintiff, the defendant again appealed on the ground that the petition showed merely a common-law liability, and

that no recovery could be had without proof of actual negligence; in other words, that a party seeking to recover under a statute must declare specially on the statute. The court overruled this contention (reaffirming its former decision on the particular point), and held that negligence might be established either by proof of negligent acts, or omissions resulting in the injury, or by proof of the constructive negligence created by section 5 of the damage act in the failure to erect a lawful fence. *Calvert v. Railroad*, 38 Mo. 467. The doctrine of this case was reaffirmed by the supreme court in *Iba v. Railroad*, 45 Mo. 469, in the most explicit terms. That was an action for killing the plaintiff's cow, brought before a justice of the peace, on a statement of a cause of action drawn in the most general terms as follows: "The Hannibal & St. Joseph Railroad Company, to Henry B. Iba, debtor, for damages amounting to $65, for a cow killed on railroad on or about the seventh day of November, 1867, $65." One of the errors assigned was that the court, in declarations of law, ruled that the plaintiff was entitled to single damages, notwithstanding that actual negligence, other than neglect to build a fence (the neglect stated in section 5 of the damage act), was not proved. This assignment of error raised for decision the question, whether this section of the damage act was exclusive, or whether it left the common-law principle in operation. In giving the opinion of the court BLISS, J., said, referring to the case just cited: "The action in that case was not brought for double damages, but the plaintiff relied upon section 5 of the chapter of damages; and the circuit court might have treated the case at bar as prosecuted under the same chapter, and, under the authority of *Calvert v. Railroad*, sustained the statement filed with the justice, though regarding it as in the nature of a common-law petition."

But the case of *Iba v. Railroad* went a good deal further. The jury found in favor of the plaintiff for double damages. The circuit judge refused to render a judgment for double damages, but rendered a judgment for single damages only. This judgment was reversed in the district court, and the plaintiff appealed to the supreme court. In the supreme court the question was raised, not merely whether section 5 of the damage act was exclusive and repealed the remedy of the common law, but whether section 43 of the railroad act, the act giving double damages for failure to fence, had such an effect. The court held that it did not. In giving the opinion of the court on this point BLISS, J., also said: "It may be claimed that when the statute has enacted a special liability the corporation is exonerated from any other. It is sometimes so. If there would be no general liability for neglect of the duty imposed, unless enacted by statute, then it could only be held for the statutory liability. But when the statute creates a special duty, for the neglect of which a common-law action would lie, that action is not forbidden by the fact merely that an extraordinary liability in the nature of a penalty is also provided. The latter is only cumulative. The liability for the greater shall not, of itself, exclude the liability for the less, provided the latter could exist without the former; nor shall the greater include the less, if the less is wholly dependent upon the greater. The statute under consideration imposes the obligation to fence. It dispenses with any other proof of negligence if the fence is not built, and it compensates the sufferer with double the loss. If nothing were said about damages the defendant would be liable for the actual loss; so, I imagine, he would be liable if nothing were said about the evidence. The obligation of itself creates the liability. The right to double compensation may be followed or abandoned. It neither

creates nor supersedes the right. That would exist without it."

In *Minter v. Railroad*, 82 Mo. 128, it was held that a general statement filed before a justice of the peace, such as the following: "Hannibal and St. Joseph Railroad Company to John S. Minter, debtor, for killing three hogs," etc., might be amended in the circuit court by substituting a statement in the nature of a petition under section 5 of the damage act for failure of the railroad company to fence, etc., without introducing a new cause of action.

In *Boone v. Railroad*, 20 Mo. App. 232, the action was commenced before a justice of the peace, and the plaintiff's statement charged that "the defendant, by its agents and servants, carelessly and negligently, with its engine and cars, ran over and killed the plaintiff's cow," etc. Under this statement, the plaintiff, against the objection of the defendant, gave evidence tending to show that the point in question was where the defendant was required by law to erect and maintain a fence on the sides of its road, and that it had neglected to do so, On appeal it was held by the Kansas City Court of Appeals that this was not error. The court, following the case last previously cited, held in substance that, under a statement setting up a case of negligence at common law, the plaintiff could recover under evidence of the statutory constructive negligence, which consisted of failing to fence under section 5 of the damage act. There are analogous decisions of the supreme court, to the effect that, under a common-law statement or count for negligence in running the defendant's locomotive and cars, it is competent to prove any negligence that contributed to produce the injury complained of, including that of the failure to ring the bell or sound the whistle, which is made negligence by

statute.  *Goodwin v. Railroad,* 75 Mo. 73; *Braxton v. Railroad,* 77 Mo. 755.  If, then, a plaintiff can, under an allegation of negligence at common law, make out a case by giving either evidence which would be evidence of negligence at common law, or evidence which is made presumptive evidence of negligence by section 5 of the damage act (R. S., sec. 4428), then it logically follows that the statute has not repealed the common law, but has furnished at most a cumulative remedy. Perhaps the best conception of the subject is that the statute has operated merely to introduce a new rule of evidence, in a particular case where the right is a common-law right; that, however, need not be discussed.

The next question is, whether the petition above set out is, in its proper interpretation, a petition under the statute, or a petition at common law.  The statute is as follows:  " When any animal or animals shall be killed or injured by the cars, locomotive or other carriages used by any railroad in this state, the owner of such animal or animals may recover the value thereof in an action against the company or corporation running such railroad, without any proof of negligence, unskilfulness or misconduct, on the part of the officers, servants or agents of such company; but this section shall not apply to any accident occurring on any portion of such road that may be inclosed by a lawful fence, or in the crossing of any public highway."

The most cursory glance at the petition will show that it was not only not intended to be a petition under the statute, but that it is not such in fact.  In order to determine this question it is necessary to consider whether, in order to recover under the petition, the plaintiff *must* prove the kind of negligence named in statute; that is, the failure on the part of the defendant to erect and maintain a lawful fence, or whether he can

succeed by proving what would be negligence at common law. It is plain that he can succeed by proving negligence at common law, and that he can neglect all that portion of his petition which speaks of the fence being erected but not being maintained, and commence with that portion where his horses were found upon the track, and where he alleges the fact that "defendant, by its agents and employes then and there running said engine and train of cars, by the exercise of reasonable care could have seen the said horses and have stopped the said engine and train of cars before overtaking or striking any of said horses, but did carelessly and negligently then and there run said engine and train of cars upon said horses, and killed the same," and yet sustain a recovery. That a petition alleging negligence in the terms last quoted (having of course the necessary preliminary matter of inducement) states a good cause of action at common law either for killing animals or human beings upon a railway track, is shown by the following decisions: *Schneider v. Railroad*, 75 Mo. 295; *Pope v. Railroad*, 99 Mo. 400; *LeMay v. Railroad*, 105 Mo. 361. The principle of these and other decisions in this state is, that it is a good and sufficient pleading to set out and describe the acts done with a reasonable degree of particularity, and then allege that they were negligently done. *Sullivan v. Railroad*, 97 Mo. 117. See also, as illustrating the principle: *Gurley v. Railroad*, 93 Mo. 445; *Johnson v. Railroad*, 96 Mo. 340. In *Schneider v. Railroad, supra,* the action was for damages for killing the plaintiff's horse, and the charging part of the petition was as follows: "Defendant so carelessly and negligently ran and managed its locomotive, engine and cars on its railroad as to run against and over said horse thereby killing him." This was held a good petition. So in *LeMay v. Railroad, supra,* the action was for damages for killing the plaintiff's

husband upon the defendant's railway track, and the essential allegations of the petition were that the deceased, "by the carelessness, negligence and unskilfulness of the defendant, its officers, agents, servants and employes, while running, conducting and managing certain cars, was run over by two cars of said defendant, and which cars were, at the time they ran over the said Frank LeMay, carelessly, negligently and unskilfully conducted and managed by said defendant, its officers, agents, servants and employes, and received injuries thereby, from which he instantly died." It was likewise held that this was a good petition.

It is argued that the petition fails to state a cause of action, in that it alleges that the defendant, "by its agents and employes then and there running said engine and train of cars, by the exercise of reasonable care *could have seen* the said horses, and have stopped the said engine and train of cars before overtaking or striking any of said horses, but did carelessly and negligently then and there run said engine and train of cars on said horses, and killed the same;" instead of averring that the defendant, by its agents and employes, *saw the horses* upon the track in time, by the exercise of reasonable care, to have stopped the engine and train of cars so as to avoid killing them. In support of this view of the measure of the defendant's liability, two decisions are cited of the Kansas City Court of Appeals: *Hoffman v. Railroad*, 24 Mo. App. 546; *Welch v. Railroad*, 20 Mo. App. 477. We do not regard these cases as having been well decided. We understand that the supreme court in *Kendig v. Railroad*, 79 Mo. 207, held precisely the reverse, qualifying and explaining its previous decision in *Wallace v. Railroad*, 74 Mo. 594. We, also, think that this conclusion is strongly supported by the analogues of the decisions of the supreme court of this state in regard to the killing or injuring

of adult persons upon railway tracks. The doctrine of that court in such cases is that where adult persons are *mere trespassers* upon the railway track, where they are upon the track at places where it is fenced and where they have no right to be, the company owes them no duty other than the duty of not wantonly injuring them, after discovering them in their exposed situation; it is not bound to look out for them, and its failure to do so is not negligence. *Barker v. Railroad*, 98 Mo. 50; *Rine v. Railroad*, 100 Mo. 228; *Shaw v. Railroad*, 104 Mo. 656. But, where the place is such that the servants of the railway company may and ought reasonably to anticipate that persons may lawfully be upon the track, as at a highway crossing or where the track is built upon a public highway or in a private coal yard intersected by railway tracks, and in other cases that might be supposed, then the rule is that the servants of the railway company are under a duty of *active vigilance*, and that, if by the exercise of ordinary care in the discharge of this duty they might have seen the killed or injured person on the track in time to have avoided killing or injuring him, and they nevertheless failed so to do, the company will be liable. *Harlan v. Railroad*, 65 Mo. 22; *Kelley v. Railroad*, 75 Mo. 138; *Dunkman v. Railroad*, 95 Mo. 244, citing numerous previous decisions of the court to the same effect; *Hilz v. Railroad*, 101 Mo. 54, citing cases.

In this state the owner of land is not bound to keep his domestic animals upon his premises or to fence them in, but they are allowed what is called a "free range," and he does not become a trespasser from the fact that they stray upon the unfenced lands of another proprietor.. *Gorman v. Railroad*, 26 Mo. 441; *Davis v. Railroad*, 19 Mo. App. 425; *Howenstein v. Railroad*, 55 Mo. 33; *Busby v. Railroad*, 81 Mo. 43; *Turner v. Railroad*, 78 Mo. 578, 581. Under the law of Missouri trespass

is not committed by cattle straying upon uninclosed land. *Bradford v. Floyd*, 80 Mo. 207; *Heald v. Grier*, 12 Mo. App. 556. It seems, therefore, to follow, on principle, that a railroad company owes the duty, in running its trains at places where its track is not fenced and where animals are liable to stray upon its track, to keep a reasonable lookout with the view of discovering any animals that may so stray upon its track in time to prevent running over and killing or injuring them.

II.   We now come to the second branch of this demurrer, which is that the petition involves a misjoinder, in one count, of two different causes of action. We do not so read the petition. It seems plain to us that the negligent killing of the plaintiff's horses is the one cause of action alleged therein, and that the act of the defendant's servants in allowing the gate to become open whereby the plaintiff's horses got upon the defendant's track, into a sort of pocket, so to speak, so that when pursued by an engine they would be restrained by the fences on either side from running off the track, and the further fact that the servants of the defendant, in driving the train which killed them, might have discovered them on the track in time to have prevented the accident, is merely the statement of two preceding acts or circumstances of negligence leading up to the single catastrophe. It is obvious that actual negligence may consist of any number of negligent acts preceding the injury or catastrophe, all of them naturally leading up to it and contributing to it, and it cannot be the law that the pleader, in stating his ground of action, is obliged to select one of these precedent acts of negligence, and rely upon that, when that alone may not be sufficient, but two or more, or all of them collectively, may be sufficient to make out his right of recovery.

Nor is the petition open to the criticism, that it

proceeds upon the ground that, by fencing its track in the town of Franklin where it was not required by law to fence, and then in leaving the gate open, whereby it created a sort of pocket or horse-trap, so to speak, it attempts to state a separate ground of actionable negligence. It may be conceded that that alone would not constitute actionable negligence. For while, as just said, the owner of cattle and horses is not obliged to restrain them from running at large, and while they are not trespassers if they do run at large upon the unfenced lands of another, yet that other is not on his part to keep his lands in a position of safety to receive them. Thus, where a railroad company accidentally left upon its uninclosed grounds an uncovered well, and the plaintiff's cattle strayed into it and were drowned, the company was not liable for them. *Hughes v. Railroad*, 66 Mo. 325. We may take judicial notice of the well-known habits of animals, and may conclude that horses on a railway track, which is fenced in on either side, although at a short distance from the track, would be more apt to run along the track when pursued by an approaching train, than to run off the track, and that they would be less apt to leave the track than where the track was entirely unfenced and a way of escape clear. The decision of the Kansas City Court of Appeals in *Boggs v. Railroad*, 18 Mo. App. 274, presents a considerable analogy to the part of the plaintiff's petition which describes the "pocket" so called, in which the horses found themselves penned when they were killed, with the exception that in that case the plaintiff's mule, which was killed, sustained the injuries which killed him in endeavoring to jump the fence, which was a barbed wire fence. The court held that, although the company was not liable under the statute (the double damage act) by reason of the fact that the mule was not killed by an actual contact with defend-

ant's engine or train, yet, under the facts of the case a common-law action for negligence might well be sustained for the omission to comply with a statutory duty. Without saying whether or not we should so hold if the same question were before us, we can see that where a railway company undertakes to maintain a fence and yet leaves a gate in the fence open, so that, when horses get inside the fence, they find themselves on its track and right of way in a sort of pocket, they are more apt to be injured upon the track than where their means of escape is not obstructed by a fence on either side, and, hence, that the servants of the company in running their trains at such a place may be under the duty of keeping a more vigilant watch and exercising greater care to avoid injuring animals upon the track than would rest upon them under other circumstances.

We are, therefore, of opinion that the learned judge erred in sustaining the demurrer to the petition; and we accordingly reverse the judgment of the circuit court, and remand the cause. But, as our decision is necessarily in conflict with the decisions of the Kansas City Court of Appeals above quoted (*Hoffman v. Railroad*, 24 Mo. App. 546, and *Welch v. Railroad*, 20 Mo. App. 477), the cause must be certified to the supreme court for final determination. It is so ordered. All the judges concur.